OPINION. MuRdook, Judge; The question for decision is whether all of the income of the blow pipe business for 1946 and 1947 should be taxed to the petitioner or whether only one-half, as his salary, should be taxed to him. He went through the form of transferring the assets of the business to his wife in 1940 and other formalities were carried out, some belatedly, in their efforts to give the impression that Irene was really the owner and operator of the business. Yet they were inconsistent in that the petitioner at times was indicated as the owner by certain formalities. The admitted motivating purpose of the transfers was to render the petitioner proof against a judgment in the suit for damages while saving the business so he could continue to earn his living from it. The transfers were held fraudulent and void as to the plaintiffs in that suit. The Commissioner contends that the petitioner never intended to convey more than legal title while retaining equitable ownership of the business for himself and, in any event, he actually earned the income and should be taxed with it. The so-called arrangements pertaining to his father’s estate do not help the petitioner’s case. He testified that the mortgage for $5,550.03 equaled the entire amount he owed the estate at that time but thereafter he used additional funds of the estate for his own use, increasing his debt to $7,000 or more. He also indicated that his share of the estate would amount to between $3,000 and $4,000. Giving up his right to such a share would not compensate the estate for the larger amount owed or replace the mortgage for $5,550.03. However, those arrangements have little or no bearing upon the issue here for decision, except, perhaps, to show that the petitioner was taking good care of his own interests. The $4,000 borrowed by Irene never went to the estate but, on the contrary, most of it went into the blow pipe business to pay debts of that business. That $4,000 did not benefit the petitioner if the business was no longer his. However, if he continued to be the equitable beneficial owner, the $4,000 was not purchase price but a temporary loan to the business which was promptly repaid from the business so that neither was Irene out of pocket as a result of it nor was the petitioner enriched by it. Irene testified, “I do not operate the business at all. I’m not an engineer and I don’t have anything to do with the actual running of it.” She had no office, rarely went to the place of business, and had no experience in managing any business. She mentioned “decisions about policy” but gave no instance in which she had made any such decision and was extremely vague on the subject. Some effort was made to show that Irene’s elderly father took over some executive authority and duties on her behalf after October 14,1940. The record as a whole shows, however, that he did not. He had been employed in the business only a few years at that time and described his duties as “largely keeping the books.” He received $50 per week and continued to keep the books and receive that same wage after October 14,1940. He had no experience or ability to qualify him as an executive in the business, restricting the scope of the petitioner’s freedom of control, and he never restricted that control in any important way, so far as the record shows. It is not clear from the record that Irene ever withdrew earnings of the business for her personal use or benefit. The peculiarities disclosed by the 1945 returns relating to the judgment payment and deduction indicate the dominance and control of the petitioner over the income from the business. The $4,000 had little relation to the value of the assets in the going business, it actually went into the business instead of to the petitioner, and it was repaid promptly from the business, The petitioner testified that the assets of the business were worth very little without the benefit of his expert advice, knowledge, and skill on blow pipe installations. He said he would not have given his services to anybody else for as little as 50 per cent of the profits. He admitted that there was no great change in management after October 14, 1940, he was absolutely essential to the continued success of the business, and he was primarily responsible for its earnings at all times, including the taxable years. He also admitted that one of his purposes in transferring the business to his wife was to preserve his means of livelihood while divesting himself of anything that could be attached in the event of any judgment. The evidence as a whole fails to show that the Commissioner erred in taxing the income of the Jacksonville Blow Pipe Company for 1946 and 1941 to the petitioner. Cf. Robert E. Werner, 7 T. C. 39; David J. Pleason, 22 T. C. 361. Eeviewed by the Court. Decision will be entered for the respondent.